UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
SUPERIOR COURT

C.A. NO.: 2014-018-M

| | |
|---|---|
| RICHMOND MOTOR SALES, INC., and LISA ROBERTSON *Plaintiffs* | ) ) ) ) |
| vs. | ) ) |
| PROGRESSIVE CASUALTY INSURANCE COMPANY a/k/a THE PROGRESSIVE CORPORATION *Defendant* | ) ) ) ) |

**DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S,
MOTION TO
DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)**

NOW COMES the Defendant, Progressive Casualty Insurance Company ("Defendant"), and hereby moves, pursuant to Fed. R. Civ. P. (12)(b)(6), that the above captioned action be dismissed against Defendant for failure to state a claim upon which relief can be granted.   As grounds therefore, Defendant submits that neither plaintiff has standing to properly seek a declaratory judgment (Count I) on the enforceability of the insurance contract between Progressive and its insured or to properly pursue an action in bad faith pursuant to R.I.G.L. § 9-1-33 (Count II).   In support of this motion, Defendant attaches a memorandum of law.

THE DEFENDANT,
PROGRESSIVE CASUALTY
INSURANCE COMPANY,
BY ITS ATTORNEYS

Date: ___2/28/2014___          _/s/ Scott M. Carroll_____
                               Scott M. Carroll, Bar No.: 7624
                               John D. Bowen, Bar No.: 9070
                               Boyle, Shaughnessy & Campo, P.C.
                               695 Atlantic Avenue
                               Boston, MA 02111
                               (617) 451-2000
                               FAX: (617) 451-5775

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 28th day of February, 2014.

I also certify that this document filed through the ECF system will be sent via first class mail to the non-registered participant as identified below:

John O. Mancini, Esq.
Nicholas J. Goodier, Esq.
Law Officers of Michael A. Kelly, P. C.
128 Dorrance Street, Suite 300
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
SUPERIOR COURT

C.A. NO.: 2014-018-M

| | |
|---|---|
| RICHMOND MOTOR SALES, INC., and LISA ROBERTSON *Plaintiffs* | ) ) ) ) |
| vs. | ) ) |
| PROGRESSIVE CASUALTY INSURANCE COMPANY a/k/a THE PROGRESSIVE CORPORATION *Defendant* | ) ) ) ) |

## DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6).

### INTRODUCTION

The defendant, Progressive Casualty Insurance Company a/k/a the Progressive Corporation (Progressive), respectfully submits this memorandum in support of its Motion to Dismiss the plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Neither plaintiff has standing to properly seek a declaratory judgment (Count I) on the enforceability of the insurance contract between Progressive and its insured, Lisa Robertson, or to properly pursue an action in bad faith pursuant to R.I.G.L. § 9-1-33 (Count II). Further, because these claims must fail, so to must the plaintiffs' general claim for damages (Count III) based upon its allegations.

### FACTS

3

According to the allegations in Richmond's complaint, it rented a vehicle to Ms. Robertson on or about October 29, 2012. Exhibit A: Complaint at ¶ 6. The plaintiffs allege that the vehicle was damaged while traveling on Smith Street in Providence, Rhode Island, on or about November 17, 2012. Id. at ¶ 9. Richmond sought coverage for the damage to the vehicle through Ms. Robertson's automobile insurance carrier, Progressive. After an investigation Progressive determined that Ms. Robertson did not have coverage for the damages alleged. See Exhibit B: Denial Letter. Richmond, with Ms. Robertson as co-plaintff, then filed the instant suit, asserting three Counts.

First, the plaintiffs seeks a declaratory judgment from this Court that Progressive did not provide property damage coverage to Ms. Robertson as required by R.I.G.L. § 27-7-6, "Rental Vehicle Coverage." Secondly, the plaintiffs assert a count for bad faith under R.I.G.L. § 9-1-33. Finally, the plaintiffs seek damages that Richmond alleges it incurred due to its allegations in the prior Counts.

In its answer, Progressive asserted the affirmative defenses of lack of standing, and a failure to state a claim upon which relief can be granted. Exhibit C: Answer. It is upon those affirmative defenses that Progressive now moves to dismiss the plaintiffs' Complaint.

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 12(b)(6), a defendant may move for the dismissal of a complaint that fails to state a claim upon which relief can be granted.   In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all allegations in the complaint.  DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3rd Cir. 2007).  However, to survive a motion to dismiss, the [f]actual allegations

must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544 (2007). The plaintiff must allege sufficient facts to show that

he has a plausible entitlement to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 2009).

## ARGUMENT

I.   RICHMOND HAS NO STANDING TO PURSUE A DECLARATORY
     JUDGEMENT ACTION AGAINST PROGRESSIVE

   a.  <u>Since Richmond is Not A Party To The Progressive Insurance
       Contract, It has Not Presented A Justiciable Controversy Necessary
       For a Declaratory Judgment.</u>

The Rhode Island Supreme Court has been consistent in holding that a court is

"without jurisdiction under the [UDJA] unless it is confronted with an actual justiciable

controversy." <u>McKenna v. Williams</u>, 874 A.2d 217, 226 (R.I. 2005). "For a claim to be

justiciable, two elemental components must be present: (1) a plaintiff with the requisite

standing, and (2) 'some legal hypothesis which will entitle the plaintiff to real and

articulable relief.'" <u>N&M Properties</u>, 964 A.2d at 1145 (citing <u>Bowen</u> 945 A.2d at 317).

A finding of "prudential standing 'ordinarily require[s] a plaintiff to show that his

claim is premised on his own legal rights (as opposed to those of a third party)[.]'"

<u>Cosajay v. Mortgage Electronic Registration Systems, Inc.</u>, 2013 WL 5912569 (D.R.I.

2013) (quoting <u>Pagan v. Calderon</u>, 448 F.3d 16, 27 (1st Cir.2006)). "A standing inquiry

focuses on the party who is advancing the claim rather than on the issue the party seeks to

have adjudicated." <u>Bowen</u>, 945 A.2d at 317. "Thus, when standing is at issue, the focal

point shifts to the claimant, not the claim, and the court must determine if the plaintiff

whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." McKenna, 874 A.2d at 225.

Under Rhode Island law, only parties to a contract have the requisite standing pursue a declaratory action or seek enforcement under a contract. Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004); Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Ct. 1997) (holding that "one who is not a party and has no right to enforce a contract lacks standing to seek a declaration of rights under that contract."). Such a stance is not unique to Rhode Island, but true among most states as "most courts would hold that the absence of privity of contract between an injured-party claimant and the alleged tortfeasor's insurer bars not only a direct damages action but also a declaratory-judgment action against that insurer." Mendez v. Brites, 849 A.2d 329, 331 FN2 (R.I. 2004).

In the case at hand, it is indisputable that the Progressive policy constitutes a contract of insurance between Progressive and Ms. Robertson only. Richmond is no way a party to said contract and is completely devoid of the necessary privity to sustain the action at hand. As a third party claimant, Richmond simply does not have standing to seek a declaration that Progressive owes Ms. Robertson, under a contract between those two parties, coverage for the damage allegedly sustained by Richmond's vehicle.

b. An Injured Party Is Prohibited From Naming An Insurer As A Defendant Directly.

In addition to its' complete lack of privity to seek a declaration to a contract under which it is not a party, Richmond is also explicitly foreclosed from joining Progressive as a defendant under Rhode Island statutory law. R.I.G.L. § 27-7-2 holds:

An injured party, or, in the event of that party's death, the party entitled to sue for that death, in his or her suit against the insured, **shall not join the insurer as a defendant**.... The injured party, or, in the event of that party's death, the party entitled to sue for that death, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer; provided, the payment in whole or in part of the liability by either the insured or the insurer shall, to the extent of the payment, be a bar to recovery against the other of the amount paid.

(Emphasis added). Section 27-7-2 forecloses a third party claimant from naming a tortfeasor's insurer as a defendant unless it first obtains a judgment against the insured in a prior and separate action. The statute does list some limited exceptions to this proscription, namely insured dies prior to judgment or if the officer serving any process against the insured shall return that process non est inventus, yet no such exception is relevant to the action at hand.

In interpreting § 27-7-2, the Rhode Island Supreme Court has been clear that "in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor." Mendez 849 A.2d at 331 FN2. When considering a third party claimant-plaintiff who directly named an insurer as a defendant without first obtaining a judgment against the insured tortfeasor, the Rhode Island Supreme Court found that the "action by plaintiff was wholly premature and did not state a claim upon which relief could be granted[.]" Canavan v. Lovett, Schefrin and Harnett, 745 A.2d 173 (R.I. 2000).

It is no relief to Richmond that the Rhode Island Supreme Court has ruled on the merits in two distinguishable declaratory judgment actions raised by third party claimants, as the issue of standing was never raised in either case. See Mendez, 849 A.2d

at 333 FN2; Robinson v. Mayo, 849 A.2d 351, 353 (R.I. 2004). Both cases involved plaintiffs who were injured in separate automobile accidents in Rhode Island by drivers from Massachusetts. In each instance the respective plaintiffs brought suit against the defendant driver and that driver's insurance company, which had declined coverage. See id. Both cases were decided on the merits only after the Court acknowledged the insurers' failures to raise the issue of standing. See id. When deciding to address the merits in Robinson, the Court admitted that "[g]enerally speaking, it would seem clear that plaintiff lacked standing to bring such a direct action against [the insurer] under these circumstances."[1] Robinson, 849 A.2d at 353 N2.

In the instant case, standing has been properly raised. Since the Rhode Island Supreme Court acknowledged that a third party claimant, such as Richmond, cannot pursue a declaration to assert the rights to a contract of which it is not a party and because such a third party is foreclosed to proceed in such an action by § 27-7-2, Richmond's Count I, seeking declaratory relief, should be dismissed.

## II.   RICHMOND HAS NO STANDING TO PURSUE A BAD FAITH ACTION AGAINST PROGRESSIVE BECAUSE IT IS NOT A NAMED INSURED UNDER THE POLICY

Richmond also lacks standing under Count II where it seeks a claim of bad faith under § 9-1-33, because it is not a named insured under the policy at issue. The Rhode Island Supreme Court has long held that an insurer may only be pursued for bad faith under §9-1-33 by own of its own insured as a party to an insurance contract. The rulings

---

[1] In addressing why the Court decided Robinson on the merits, the Court held that "we will assume arguendo the existence of standing because no party in this case has briefed this issue to us or invoked § 27-7-2 as a bar to plaintiff's joinder of [the insurer] as a party to this action."

of the Rhode Island Supreme Court with regards to § 9-1-33 have been particularly explicit, stating that the statute "specifically designates to the 'insured' the cause of action against an insurer's bad-faith refusal to pay a claim. It does not permit suits by someone 'conceived of as . . . the insured' or 'standing in the same position as an insured.'" Cianci, 659 A.2d at 666 (quoting Travelers Insurance Co. v. Savio, 706 P.2d 1258, 1272 (Colo. 1985)). The Court has been consistent in its holdings regarding § 9-1-33, finding that "the Legislature, in explicitly restricting the right to sue for a bad-faith refusal to pay a claim to an 'insured,' intended § 9-1-33 to apply only to those claimants who meet 'the technical insurance-contract meaning' of the term." Id. See also Robertson Stephens, Inc. v. Chubb Corp., 473 F. Supp. 2d 265, 270-271 (D.R.I. 2007) ("[The Rhode Island Supreme Court] has balked at attempts to broaden § 9-1-33(a)'s cause of action beyond what the statute explicitly provides.") (citing Cianci, 659 A.2d at 666); An insurer therefore has no duty to act in good faith towards a third party claimant because, as stated by the Court, "there is no duty on the part of an insurance carrier for a third party to settle promptly with a claimant. Any obligation to deal with settlement offers in good faith runs only to the insured." Auclair v. Nationwide Mut. Ins. Co., 505 A.2d 431, 432 (R.I. 1986).

The landmark decision regarding a third party's rights, or lack thereof, under an insurance contract is Cianci, 659 A.2d at 667. There a plaintiff injured during the course of his employment attempted to pursue directly his employer's insurer, arguing that he was a "statutory insured" under his employer's workers' compensation insurance because the Workers' Compensation Act required his employer to have insurance coverage for his injuries. The plaintiff believed that, because the Workman Compensation Act was intended to protect injured employees, he was "a direct beneficiary able to assert his

rights as a party to the contract." However, the Rhode Island Supreme Court disagreed, having already "addressed the relationship between a claimant and the insurer of a third party alleged to be liable and concluded that the **relationship between the two entities is an adversarial one**." Id. (emphasis added). Expanding on the need for a party to have privity under a contract to maintain such an action, the Court found that "the claimant is a stranger to the relationship between the insurer and the insured and is not in privity of contract with them" and thus the plaintiff had "no support for the contention that [a claimant] may bring suit against the carrier for bad faith, breach of contract, or breach of fiduciary relationship." Id. Simply put, the Rhode Island Supreme Court made it explicitly clear in Cianci that such a plaintiff "was not a party to the contract … [and] cannot pursue a claim against [an insurer-]defendant under § 9-1-33." Id.

The holding in Cianci is directly on point regarding the facts of the case at hand. Richmond appears to argue that §27-7-6 allows a rental car company to step into the shoes of an insured because it requires that rental vehicles be included in a property liability policy. Such logic is nearly identical to the failed reasoning of the employee in Cianci under the Workman Compensation Act. There simply is no such thing as a "statutory insured" in the context of an injured third party bringing a bad faith action under a contract to which he or she is a stranger. There is no doubt that Richmond is not a named "insured" under Progressive's policy with Ms. Robertson. Since § 9-1-33 permits only the named insured to bring a bad faith action against his or her insurer, Richmond's Count II for bad faith must be dismissed.

III.   RICHMOND'S ARGUMENT THAT § 27-7-6 CREATES STANDING
       IS INCORRECT.

As stated above, it is well-settled under Rhode Island law that non-parties to a contract do not have standing to seek to have rights declared under a contract and that, under § 27-7-2, such a party lacks standing to maintain a direct action against a tortfeasor's insurer. Mendez 849 A.2d at 333 FN.2. However, in its' complaint, Richmond asserts that § 27-7-6 has somehow has made an exception to both § 27-7-2 and the general rule of standing and would allow it to pursue Progressive directly.

Such an interpretation goes far beyond the plain language of § 27-7-6, which merely requires insurers to provide property damage liability insurance coverage to their insureds for vehicles the insured may rent, subject to certain conditions. Nowhere in the statute does it state that it has created an exception to § 27-7-2, a provision in the same title and chapter, or the general rules of standing. If such was the intent of the Legislature, such language would have been included as "[t]he Legislature is presumed to know of existing relevant law when it enacts or amends a statute." State v. Delbonis, 862 A.2d 760, 768-69 (R.I. 2004). Indeed, had the Legislature intended to make such a significant change in abrogating well-settled rules of standing for a certain class of entities, rather than merely require certain coverage to insureds, clearly it would have done so explicitly. "It is not [the Court's] role to contort the language of an unambiguous statute in order to include within its reach a situation which it plainly does not encompass." Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 536 (R.I. 2012).

Richmond flawed reasoning is exemplified by a similar statute under the same chapter. R.I.G.L § 27-7-2.5, the medical payments section of the liability insurance chapter, states that all automobile liability insurers must provide $2,500 of medical

payments coverage per individual. According to Richmond's reasoning, § 27-7-2.5 would not only require medical coverage be provided to insured, but would also create an exception to § 27-7-2 and principles of standing for health-care providers. Under such logic, a healthcare provider could proceed directly against the insurer rather seek payment from the insured if coverage was denied. Since such was clearly not the purpose of § 27-7-2.5, it would be equally incredulous to apply such reasoning to § 27-7-6.

Therefore, Richmond therefore is incorrect in its assertion that § 27-7-6 provides it standing to seek a declaration of the rights Lisa Robertson had under her insurance contract with Progressive.

IV.   LISA ROBERTSON HAS NO STANDING UNDER R.I.G.L. § 9-30-1 OR R.I.G.L § 9-1-33 BECAUSE NO JUSTICIBLE CONTROVERSY EXISTS BETWEEN PROGRESSIVE AND MS. ROBERTSON

a.   Lisa Robertson Faces No Injury In Fact Necessary To Establish A Justiciable Controversy Under R.I.G.L § 9-30-1.

The plaintiff Lisa Robertson lacks standing under R.I.G.L § 9-30-1 and § 9-1-33 to pursue a declaratory judgment or an action in bad faith because no actual justiciable controversy exists between Progressive and Ms. Robertson.  Section 9-30-1 represents the codification of the Uniform Declaratory Judgment Act ("UDJA") under Rhode Island law. N & M Properties v. Town of West Warwick, 964 A.2d 1141, 1144 (R.I. 2009). "When confronted with a request for declaratory relief, the first order of business for the trial justice is to determine whether a party has standing to sue." Bowen v. Mollis, 945 A.2d 314, 317 (R.I. 2008). Rhode Island courts have been clear that "a necessary predicate to a court's exercise of its jurisdiction under the [UDJA] is an actual justiciable controversy." Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004) (quoting DeAscentis v. Pine 729 A.2d 715, 717 (R.I. 1999)); Sullivan v. Chafee, 703 A.2d 748,

751 (R.I. 1997). The Rhode Island Supreme Court has further held on multiple occasions that "by definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action; that is to say, a plaintiff who has suffered 'injury in fact.'" Meyer, 844 A.2d at 151; Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 28 (1974).

Under Rhode Island law, "[t]o satisfy the standing requirement, a plaintiff must allege "that the challenged action has caused him injury in fact, economic or otherwise." Watson v. Fox, 44 A.3d 130, 135 (2012). A "plaintiff's alleged injury must be a 'legally cognizable and protected interest that is concrete and particularized... and... actual or imminent, not conjectural or hypothetical.'" Id. at 135-136. "Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury[.]'" Rhode Island Ophthalmological Society, 113 R.I. at 28 (citing O'Shea v. Littleton, 414 U.S. 488 (1974)).

In the matter at hand, Ms. Robertson has no standing to bring a declaratory judgment action under R.I.G.L § 9-30-1 against Progressive because Ms. Robertson faces no injury or legal responsibility that would trigger Progressive's duties under the policy. Under Ms. Robertson's policy with Progressive, the insuring agreement regarding liability coverage states: "If you pay the premium for this coverage, we will pay damages for bodily injury and property damage for which an **insured person becomes legally responsible** because of an accident.... We will settle or defend, at our option, any claim for damages covered by this Part I." (emphasis added).

However, in the case at hand, Ms. Robertson faces no such legal responsibility in connection with this claim. At no point has the claimant, Richmond, pursued Ms. Robertson, the alleged tortfeasor, for the damages Richmond claims she is responsible. If

Richmond pursued a claim against Ms. Robertson, she would have the right to demand that Progressive provide her a defense and possibly indemnify her. However, since Richmond has never pursued such an action to determine the liability of Ms. Robertson, the alleged tortfeasor, no such demand has ever been made to Progressive and no duties it would owe to an insured have been triggered. Thus because no action has ever been taken against Ms. Robertson to determine her liability, she faces no injury in fact to necessary establish a judiciable controversy against Progressive. As stated above, Rhode Island law requires an actual injury in fact, economic or otherwise, to maintain standing under R.I.G.L § 9-30-1 and the UDJA. Here, Ms. Robertson faces no such injury. As explicitly held by the courts many times over, Ms. Robertson cannot bring a declaratory action against Progressive when there is simply the lack of any legal responsibility or injury to which the Court could grant relief.

Moreover, the simple possibility that Richmond could pursue its claim for damages against Ms. Robertson does not create a injury in fact because such a possibility is only hypothetical and not imminent as required under Rhode Island law. To maintain standing, a plaintiff's injury must be concrete, particularized, actual, imminent, and not conjectural or hypothetical. Here, there is no actual or imminent threat of an injury as no effort has been undertaken by Richmond to collect their alleged damages from Ms. Robertson. Under normal circumstances, Richmond's mere ability to take action against Ms. Robertson would create only a speculative and conjectural injury insufficient to establish standing. However, under the current circumstances, such a threat is made significantly more remote considering that both Ms. Robertson, the alleged tortfeasor, and Richmond, the third-party claimant, are co-plaintiff's represented by the same

counsel. Aside from the obvious conflict of interests in plaintiff's counsel representing two inherently adverse parties, the parties' status as co-plaintiffs show that there is no imminent threat of a claim being made against Ms. Robertson.

         b. <u>Progressive Has Not Breached Its' Insurance Contract With Lisa Robertson, An Thus She Cannot Assert a Bad-Faith Action Under R.I.G.L § Faces No Injury In Fact Necessary To Establish A Justiciable Controversy Under R.I.G.L 9-1-33.</u>

If no judiciable controversy exists, there can be no basis under which an insured may pursue an action for bad faith against their insurer. Rhode Island Courts have found that success on a breach of contract claim against an insurer is a prerequisite to maintaining a bad faith claim. "Under Rhode Island law ... a plaintiff first must show that he or she is entitled to recover on the contract before he or she can prove that the insurer dealt with him or her in bad faith." <u>Zarrella v. Minnesota Mut. Life Ins. Co.</u>, 824 A.2d 1249, 1261 (R.I. 2003), *citing* <u>Bartlett v. John Hancock Mutual Life Insurance Co.</u>, 538 A.2d 997, 1000 (R.I. 1 988). *See also* <u>Lamoureaux v. Merrimack Mut. Fire Ins. Co.</u>, 751 A.2d 1290, 1293 (R.I. 2000), *citing* <u>Lewis v. Nationwide Mutual Insurance Co.</u>, 742 A.2d 1207, 1209 (R.I. 2000) ("Before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract.").

Here, Ms. Robertson has clearly asserted a claim for bad faith against the Progressive, but makes no mention of a breach of contract claim. <u>See</u> Exhibit A, ¶¶ 18-21. Yet according to Rhode Island law, Ms. Robertson may only pursue Progressive for bad faith after it has been determined that Progressive breached the insurance contract when it denied coverage to the subject claim. <u>See</u> <u>Cianci v.</u>

Nationwide Insurance Company, 659 A.2d 622, 666 (1995). There are two primary rationales for requiring the breaching of the insurance contract to be a prerequisite to bad faith: 1) avoidance of undue prejudice to the insurer and 2) promotion of judicial economy. *See* Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002); Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1002 (R.I. 1988), *abrogated on other grounds by* Skaling, supra.

Since Ms. Robertson faces no injury required to establish standing and a justiciable controversy under R.I.G.L § 9-30-1, it cannot be said that Progressive failed in any of its duties under the insurance contract pursuant to § 9-1-33 because such duties were never triggered. The policy is clear that Progressive will provide coverage for property damage an insured person becomes legally responsible as the result of an accident. Yet, here, no action was ever undertaken to determine if the "insured person" in this case was "legally responsible for an accident." Therefore coverage on the part of Progressive was never triggered. For instance, as stated above, Ms. Robertson would have had the right to demand Progressive provide her a defense had Richmond properly asserted a claim against her to determine liability. Yet since no such action was ever brought and no request for the provision of a defense ever conveyed, Progressive could not possibly be said to have breached the insurance contract. Furthermore, since no determination as to Ms. Robertson's liability has ever been made, Progressive's refusal to pay Richmond also cannot be considered a breach of the insurance contract. Ms. Robertson simply cannot assert a claim of bad faith under circumstances of Progressive never having breached the insurance contract.

V.   THE PLAINTIFFS' COUNT III REGARDING DAMAGES IS
DERIVATIVE OF THE COMPLAINT'S PRIOR COUNTS AND
THEREFORE MUST FAIL AS WELL

The plaintiffs' claim for damages (Count III) is applicable only if they can successfully establish either of the preceding claims. As demonstrated, each plaintiff lacks standing to pursue either its prayer for declaratory relief or its claim of bad faith. It can only follow that this derivative damages claim similarly must fail. See, e.g., Desjarlais v. USAA Ins. Co., 824 A.2d 1272, 1277 (R.I. 2003) (holding that derivative claims "are inextricably linked to the underlying claims because their success depends on the success of those underlying claims"); Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 276 (R.I. 2009) (holding that the plaintiff wife's "claim for loss of consortium must fail because it wholly depends upon the success of the underlying tort claim brought by her husband," upon which summary judgment was granted).

As such, Count III of the plaintiffs' Complaint must too be dismissed.

## CONCLUSION

In all, Lisa Robertson has no standing to bring a declaratory judgment or bad faith action because she has not been injured in fact and no justiciable controversy exists between her and Progressive. Moreover, Richmond, a non-party to the contract between Progressive and Ms. Robertson, does not have standing to seek a declaration that coverage should have been provided to Ms. Robertson under § 27-7-6. Additionally, as a stranger to the contract, Richmond also cannot assert a claim for bad faith against Progressive. Because these claims must fail, so too must the plaintiffs' claim for damages.

For the above reasons, the Plaintiffs' Amended Complaint should be dismissed against Progressive.

<div style="margin-left: 40%;">

THE DEFENDANT,
PROGRESSIVE CASUALTY
INSURANCE COMPANY,
BY ITS ATTORNEYS

</div>

Date: ____2/28/14____          /s/ Scott M. Carroll_____
                                    Scott M. Carroll, Bar No.: 7624
                                    John D. Bowen, Bar No.: 9070
                                    Boyle, Shaughnessy & Campo, P.C.
                                    695 Atlantic Avenue
                                    Boston, MA 02111
                                    (617) 451-2000
                                    FAX: (617) 451-5775

# EXHIBIT

# A

STATE OF RHODE ISLAND
PROVIDENCE COUNTY, SC

SUPERIOR COURT

RICHMOND MOTOR SALES, INC.,
and LISA ROBERTSON,

    *Plaintiffs*,

vs.

PROGRESSIVE CASUALTY
INSURANCE COMPANY a/k/a THE
PROGRESSIVE CORPORATION,

    *Defendant.*

C.A. No.: 2013-5406

## AMENDED COMPLAINT AND JURY DEMAND

**NOW COME** the Plaintiffs and hereby commence this instant action against the Defendant to recover monies due in accordance with Rhode Island State Law.

### *Parties*

1.      The Plaintiff, Richmond Motor Sales, Inc. (hereinafter "Richmond"), is a Rhode Island Domestic Profit Corporation with a principal office located at 700 North Main Street, Providence, Rhode Island.

2.      The Plaintiff, Lisa Robertson (hereinafter "Robertson"), is a Rhode Island resident with an address of 87 Potter Street, Cranston, Rhode Island.

3.      The Defendant, Progressive Casualty Insurance Company a/k/a The Progressive Corporation (hereinafter "Defendant" or "Progressive"), is an Ohio Corporation engaged in the business of supplying products in several States, including the State of Rhode Island.

4.      Plaintiffs Richmond and Robertson will be referred to in their individual capacities or collectively referred to as the "Plaintiffs" where appropriate.



SUPERIOR COURT
FILED
...Y S. KINCH JR., CLERK
2013 NOV 15 P 4: 1 1

*Jurisdiction*

5.     This Court has jurisdiction over the subject matter herein pursuant R.I. Gen. Laws § 8-2-14.

**General Allegations**

6.     Robertson rented a 2012 Toyota Camry (hereinafter "Car") from Richmond on or about October 29, 2012. *See Contract attached at* Exhibit A.

7.     Richmond entered into the rental agreement with Robertson after she produced a copy of her Rhode Island State Driver's License and an Auto Liability Insurance Identification Card issued by Defendant, attached hereto at Exhibit B.  Richmond verified that Robertson, minimally, carried automobile liability insurance.

8.     Richmond documented the physical condition of the Car in several photographs taken in the presence of Robertson, prior to her rental of the Car. *See seven photographs attached with Contract at* Exhibit A.

9.     On or about November 17, 2012, the Car, while in the custody and control of Robertson, was damaged while it was traveling on Smith Street in Providence, Rhode Island.

10.     The Estimate written by Progressive Assessor, David Horta, on or about December 2, 2012, calculated the total cost of repairs for the Car to be Six Thousand, Nine Hundred and Twenty-Nine Dollars and Fifty-Eight Cents ($6,929.58). *See Progressive Estimate Report attached at* Exhibit C.

11.     Despite numerous attempts, Richmond has not obtained payment from the Defendant, in the amount stated on the Estimate, dated December 2, 2012.

12.     To date, Richmond has not received compensation for the damage to the Car, as described herein, and/or for loss of the Car's use.

## COUNT I
*(Declaratory Judgment as to the Violation of Liability Insurance Coverage)*

13.   Plaintiffs reallege and incorporate paragraphs 1 through 12 as if set forth fully herein.

14.   Rhode Island General Law § 27-7-6 states that, "For liability assumed under a written contract, coverage shall be provided under the property damage liability section of an insured's private passenger automobile insurance policy.  Property damage coverage shall extend to a rented motor vehicle, under ten thousand (10,000) lbs, without regard to negligence for a period not to exceed sixty (60) consecutive days."

15.   Robertson's liability insurance coverage from Progressive extends to cover any rented motor vehicle based on State law; therefore, any damage to the Car must be covered by Progressive.

16.   Progressive's failure to remit payment to Richmond the full value of the total loss of the Car as described herein, is in violation of Rhode Island General Law § 27-7-6.

17.   As a direct and proximate result of Progressive's failure to remit payment to Richmond in the amount stated on the Estimate, dated December 2, 2012, Richmond has suffered damages.

**WHEREFORE**, Plaintiffs respectfully pray that this Honorable Court enter an order that provides as follows:

a. A declaration by this Court, pursuant to, and in accordance with, Rhode Island General Laws § 9-30-1, *et seq.*, that Progressive has violated Rhode Island General Law § 27-7-6;

b. An award to Plaintiffs of any and all attorneys' fees, costs and other disbursements or expenses incurred by Plaintiffs as a result of prosecuting the above-captioned matter; and,

3

c. An award to Plaintiffs of such other further relief as this Court may deem fair, just and equitable.

## COUNT II
### *(Bad Faith/ Breach of Implied Good Faith Against the Defendant)*

18.    Plaintiffs reallege and incorporate paragraphs 1 through 17 as if set forth fully herein.

19.    Progressive's failure to resolve the claim associated with the damages sustained by the Car, asserted pursuant to Robertson's insurance policy constitutes a breach of the implied covenant of good faith and fair dealing, as mandated by State law, and required under the terms of the insurance coverage, pursuant to the State law.

20.    Progressive's actions, as described herein, are in violation of Rhode Island General Law § 9-1-33.

21.    As a direct and proximate result of Progressive's violation of Rhode Island General Law § 9-1-33, the Plaintiffs have suffered damages.

**WHEREFORE,** the Plaintiffs demand judgment against Progressive for all compensatory damages provable at trial, interest, punitive damages, and all attorneys' fees, costs and expenses incurred in prosecuting this instant action, and any such other and further relief as may be deemed just by this Honorable Court.

## COUNT III
### *(Damages)*

22.    Plaintiffs reallege and incorporate paragraphs 1 through 21 as if set forth fully herein.

23.    As a result of the damages sustained to the Car on or about November 17, 2012, the Car could not be rented.

4

24.    As a direct and proximate cause of being unable to rent the Car, Richmond has suffered damages.

**WHEREFORE**, Plaintiffs respectfully pray that this Honorable Court enter an order that provides as follows:

a. An award of damages compensating Richmond for its loss of use of the Car;

b. An award to Plaintiffs of any and all attorneys' fees, costs and other disbursements or expenses incurred by Plaintiffs as a result of prosecuting the above-captioned matter; and,

c. An award to Plaintiffs of such other further relief as this Court may deem fair, just and equitable.

<u>JURY DEMAND</u>

Plaintiffs hereby demands a trial by jury, designating John O. Mancini, as its lead counsel.

Plaintiffs,

**RICHMOND MOTORS SALES, INC.,**
**AND LISA ROBERTSON,**

By and through their attorneys,

John O. Mancini, Esquire (#6061)
Nicholas J. Goodier, Esquire (#7858)
Law Offices of Michael A. Kelly, P.C
128 Dorrance Street, Suite 300
Providence, RI  02903
Tel#: (401) 490-7334
Fax#: (401) 490-7874

Dated: November 15, 2013

N:\Badway, Thomas\Progressive Robertson CA No. 13-5406\Pleadings\Complaint\Complaint\Richmond Motors - Robertson Amended Complaint.docx

# EXHIBIT

# B



ATTORNEYS AT LAW

**BOYLE, SHAUGHNESSY & CAMPO, P.C.**
*Boston, MA  -  Manchester, NH  -  Providence, RI   -  Hartford, CT  -  Portland, ME*

695 ATLANTIC AVENUE
BOSTON, MA 02111
(617) 451.2000 TEL
(617) 451.5775 FAX
www.BSCtrialattorneys.com
SCOTT M. CARROLL - *Shareholder*
scarroll@BSCtrialattorneys.com

November 22, 2013

**CERTIFIED MAIL R/R/R:**
**70123050000072654286**

Lisa Robertson
132 Wollaston Street
Cranston, RI, 02910

RE:     Insured:        Lisa Robertson
        Claimant:       Richmond Motor Sales & Rental
        Date of Loss:   11/17/2012 [sic]
        Claim No.:      12-2654933
        Our File No.:   PRG-2609

## NOTIFICIATION OF DENIAL OF CLAIM

Dear Ms. Robertson:

    We represent Progressive Insurance Company ("Progressive") with regard to the claim for coverage asserted by Richmond Motor Sales & Rental ("Richmond"). Please be advised that after carefully considering the claim presented, Progressive hereby denies coverage under Progressive Policy No. 31561637-1 ("Policy"). The basis for Progressive's denial is set forth below.

## I. POLICY TERMS

    The policy insures against losses or damages sustained or incurred by reason of an:

- **"Accident"** mean[ing] a sudden, unexpected, and unintended occurrence.

DUTIES OF THE INSURED

- **A person claiming coverage must:**

1. Cooperate with us in any matter concerning a claim or lawsuit;
2. Allow us to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions we may ask as often as we may reasonably require;
3. **Authorize us to obtain medical and other records.**

PART I – LIABILITY TO OTHERS INSURING AGREEMENT

- Subject to the Limits of Liability, if you pay the premium for liability coverage, we will pay damages, other than punitive or exemplary damages, for bodily injury and property damage for which an insured person becomes legally responsible because of an accident arising out of the:
    1. Ownership, maintenance, or use of a vehicle.

FRAUD OR MISREPRESENTATION

- This policy was issued in reliance upon the information provided on your insurance application.

- We may **void this policy** if you or an insured person:
    1. **Made incorrect statements or representations to us with regard to any material fact or circumstance;**
    2. **Concealed or misrepresented any material fact or circumstance; or**
    3. **Engaged in fraudulent conduct; at the time of application**

- We may **void** this policy due to **fraud, misrepresentation** or an incorrect statement of a material fact in the application, **even after the occurrence of an accident or loss. This means that we will not be liable for any claims or damages which would otherwise be covered.** However, if we certify this policy as proof of financial responsibility, nothing in this provision shall affect coverage under part I - Liability to Others up to the minimum limits required by the Rhode Island Motor Vehicle Safety Responsibility for an accident that occurs before we notify the named insured that the policy is void. **No coverage will be provided to you or any other person who engages in fraudulent conduct in connection with an accident or claim. If we void this policy, you must reimburse us if we make a payment.**

2. We may **deny coverage for an accident or loss** if you or an insured person have **knowingly concealed or misrepresented any material fact or**

circumstances, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## II. THE INVESTIGATION

As a result your claim, Progressive began a comprehensive investigation into the loss.

On November 27, 2012 at 12:47PM, Timothy Monk of Progressive Insurance Company contacted you to conduct a recorded statement. According to your testimony, you rented a 2012 Toyota Camry from Richmond on October 29, 2012, because you needed maintenance work done on your 2005 Chrysler. You stated that on November 17, 2012 you were traveling in the rental vehicle on Smith Street when, upon going over a large speed bump in front of the Rhode Island capital building, you heard a loud noise from underneath the car. You claimed to have been going the speed limit and did not report the incident to Progressive because you thought that there was no damage to the vehicle. Instead, you claimed to have reported the incident to Richmond via your cell phone promptly on November 17. However thus far you have refused to cooperate in providing cell phone records to substantiate this version of events.

You claim that you returned the subject vehicle on November 21 because "it was due for an oil change." The timing of this is unusual considering that your policy lapsed on November 22, 2012. It is also surprising that you would, as you claim, subsequently return to Richmond on Thanksgiving Day, November 22, to rent another vehicle. You also stated to have been unaware of any damage to the vehicle until you were called and informed by Richmond on November 26. You claim a lack of such knowledge despite having driven for three more days in a vehicle that Richmond said was not drivable, having incurred, according to Progressive's appraiser, $6,929.58 worth of damage. Furthermore, by November 26 your policy was no longer in effect, having lapsed on November 22. It was only after being informed that your policy had lapsed, and before speaking to Timothy Monk, that you made a payment to reinstate the policy on November 27.

Richmond provided two separate rental agreements to support this claim. The agreement designated "RA No. 111413" was purportedly signed by you. The information on this agreement was imputed entirely by hand. Notably, this agreement is completely lacking as to any information regarding price per-day or the total cost of the rental. Meanwhile the rental agreement enumerated as "RA 19213" contains much of the same information yet is partly typed and partly handwritten. Unlike RA No. 111413, RA 19213 does contain a description of cost and shows a 29 day rental for $837.81 (odd considering the rental was for only 23 days). However it does not appear that RA 19213 was ever signed. Both agreements show odometer statements of "Miles Out: 14,445" and "Miles In: 18,942", thus indicating you

drove 4,497 miles in only 23 days. Based upon the information furnished by Richmond, the payment for the rental for that length of time far exceeds the cost to repair a radiator on a 2005 Chrysler. You claimed that you were to pay Richmond $600 in cash for the rental, but that is not substantiated by any rental agreement or documentation provided from Richmond. It must also be noted that Richmond did not provide a rental agreement or evidence of payment until it learned that Ms. Robinson's coverage had lapsed on November 22, 2012.

A. Forensic Report.

Progressive Insurance retained Parkka Collision Consultants ("Parkka") to evaluate the damage to which the undercarriage the subject Toyota Camry sustained while allegedly traversing the speed bump on Smith Street. In performing a detailed inspection of the damage sustained by the vehicle and speed bump alleged to have caused the loss, Parkka concluded that, based on the dimensions of the vehicle, its' tires, and the speed bump, it is scientifically impossible for the speed bump on Smith Street to have caused the alleged damage. Specifically Parkka states:

*"This vehicle more likely went off the roadway and struck adverse earthen material such as rocks and dirt. The damage to the undercarriage is not uniform as compared to the straight edge on the raised crosswalk. There are also areas which are located so close to the wheel's suspension and within the circumference of the wheel, that the raised crosswalk would not be able to make contact. The configuration of the crosswalk is only 4 inches off the ground with a 10 foot ramp before leveling out. The wheel base on the Toyota would have allowed the vehicle to completely enter the ramp before traversing on to the upper brick surface. With a manufactured clearance of 6 inches, the Toyota would not be able to contact the lower surface of the raised crosswalk. Furthermore the roadway is regulated to a speed of 20 miles per hour. Numerous vehicles were observed traversing over the raised crosswalk at speeds far greater than 20 miles per hour without making contact."*

In further confirmation that your report regarding the loss was inaccurate, Parkka examined the Toyota's sensor and diagnostic module ("SDM"), commonly referred to as a black box. The SDM did not detect an impact to a speed bump like you described. Instead it detected two events only moments apart. "Event 1" was detected as an impact causing the vehicle to become stuck and "Event 2" showed a rapid acceleration followed by a significant jolt. This reading confirmed Parkka's determination, as:

*"Based on the damage to which the vehicle sustained to the undercarriage, it appears the Toyota likely struck a low fixed object at a low speed and became hung up and*

4

*unable to move. Thereafter, recorded child or small adult exited the vehicle. This would be consistent with the recorded status of the seat for [Event 2]. The vehicle was now heavily accelerated in an attempt to free itself before receiving a significant jolt. The RPMs would have increased significantly with a high rise in speed as the wheels spin. This is exactly what we see in the [Event 2] data. The speed is above 75.8 and the accelerator rate increased to 13.5% with 200RPM . . . as it relates to the damage and how it more likely occurred, our opinion has not changed. As for the data obtained from the Toyota, it is likely the vehicle was hung up on a low fixed object, before releasing and causing a second significant jolt after obtaining a speed of over 75.8 miles per hour. All the variables contained in [Event 2] would be consistent with the secondary impact and/ or release of the Toyota from the fixed object."*

## B. Examinations Under Oath

As part of Progressive's investigation into your claimed loss, you submitted to two examinations under oath ("EUO"), one conducted on January 15, 2013, and the other on April 30, 2013. Throughout these examinations you gave incomplete, evasive and conflicting testimony. Just some of the issues left unanswered by your testimony are as follows:

- You could not explain why you were in a rental car for approximately month and constantly renting more vehicles.
- At the time of the EUOs you had been unemployed since May 31, 2012 and were relying on $600.00 worth of monthly child support. Yet you could not sufficiently account for the funds used to pay for your rental vehicles. Furthermore you failed to produce any financial documentation to support your ability to pay for the rental vehicle.
- You testified that you took your 2005 Chrysler off the road because the $650 repair was too expensive. You then subsequently gave it away to a Michael Dwyer. However, the cost of repairing the 2005 Chrysler, is significantly exceeded by your rental costs. The rental of the subject Toyota Camry alone cost $837.81. Furthermore, you have no supporting documentation of the sale or gift to Michael Dwyer.
- You stated that you're 2005 Chrysler needed an alignment, which would have been routinely done after the vehicle had been repaired, particularly since it suffered a rear end collision. In fact the appraisal from Allstate reflects that your 2005 Chrysler was realigned after the accident.
- You could not sufficiently account for the miles driven with the rental vehicle.
- You could not sufficiently account for the direction of travel before and after the purported accident.

- Your account of attending a baby shower for a Kallena Munroe at the Chad Brown Housing Complex in Providence on the date of the purported loss, upon investigation, is not credible.
- You have failed, despite multiple requests, to produce your cell phone records from the date of loss, which are necessary to corroborate your version of events.

## III. ANALYSIS

### A. Duty to Cooperate

It is well established in Rhode Island, and throughout the country, that an insured has a duty to cooperate, and if requested, to submit to an examination under oath and produce documents relative to her claim. The United States Supreme Court has upheld an insurer's right to an investigation and truthful answers. Claflin v. Commonwealth Ins. Co. of Boston, et al., 110 U.S. 81 (1884). The Court held that an insurer has a right to all material knowledge and information "to enable [it] to decide upon [its] obligations, and to protect [itself] against false claims." Claflin, 110 U.S. at 94-95. Therefore an insured must submit to examinations under oath to fulfill his or her duty to cooperate. "It is quite apparent that if the insurer is to prepare . . . or make a just settlement, it must have from the insured a complete and truthful statement of the facts made in the spirit of co-operation and helpfulness by the insured, who is, in many cases at least, the only source of information available to the insurer." Ciaccio v. Norfolk & Dedham Mut. Fire Ins. Co., 90 R.I. 379, 384 (1960). Thus, a cooperation provision is "not a covenant but a condition which if not complied with gives the insurer the right to terminate the policy." Marley v. Bankers' indemnity Insurance Co., 53 R.I. 289, 292 (1933).

Progressive has the right to request that its' insured provide and/or authorize it to obtain records pertinent to the claim. Pisa v. Underwriters at Lloyds London, 787 F.Supp. 283 (D.R.I. 1992). An insured cannot recover payment under a policy unless he can show that he has performed his contractual and statutory obligations as "supplying this information is a contractual precondition to [the insurer]'s duty to make payment of the claim." Id. at 285.

Clearly you have failed to meet the above mentioned standard in fulfilling your duty of cooperation to Progressive. In addition to your testimony under oath, which was evasive, incomplete, inconsistent, and contrary to evidence, you have failed to produce records to which Progressive is entitled. Specifically you have failed to produce financial/banking documentation or cell phone records. In regards to your cell phone records, not only did you fail to produce them, you refused to give Progressive authorization to obtain them at your April 30, 2013 EUO, stating simply that "I'm not going to sign the records for my cell phone. . . . I don't have to sign." This refusal came despite explicit disclosures from both Progressive and your own attorney that such a refusal would be a violation of your duty to cooperate.

Therefore, because you have refused to provide the financial and cell phone records requested, Progressive is well within its' right to deny coverage as to this claim.

### B. Material Misrepresentation

Based on the findings of the accident reconstructionists and other facts known to date, it is clear that you have made material misrepresentations in the presentation of this claim. It is well settled that policyholders who intentionally furnish materially false information regarding a claim are barred from recovery. Although separately enumerated in the policy, an insured's duties of cooperation and truthfulness go hand-in-hand, and your material misrepresentations as to the accident's occurrence is thus also a violation of your duty to cooperate.

In Rhode Island, the intentional furnishing of false information of a material nature precludes coverage. A material misrepresentation is not necessarily a decisive or significant fact but rather one that is "reasonably relevant to the insurance company's investigation of a claim." Dadurian v. Underwriters at Lloyd's, 787 F.2d 756, 760 (1st Cir. 1986). "Insurance policies usually provide that any fraud or false swearing by the insured, whether before or after a loss or occurrence, relieves the insurer from liability. Under such a provision, false statements as to material matters willfully made by the insured in proofs of loss with the intention of deceiving the insurer preclude any recovery on the policy by the insured[.] . . . If a false statement is knowingly made to the insurer with regard to a material matter, the intent to defraud will be inferred. . . . A statement is material if it is reasonably relevant to an insurance company's determination as to whether there has truly been a loss, or whether a loss is covered by the policy; and/or the amount of damages to be paid under the policy. . . . The making of a misrepresentation of a material fact to an insurance company under such circumstances is sufficient to void the policy without regard to motive." Nat'l Grange Mut. Ins. Co. v. Joseph, 2004 WL 2821510, *1-2 (R.I. Super. Ct. 2004).

Throughout the investigation of this claim, you have maintained that the damage to the rental vehicle occurred when you drove over the speed bump on Smith Street, in front of the Rhode Island capital building. However during Progressive's investigation it was discovered by the Parkka accident reconstructionists that the damage to the rental vehicle could not have possibly happened as you claimed. The damage to the vehicle was not consistent with a uniform surface, like a speed bump, but rather was caused by an uneven and "earthen" material. Furthermore, the damage could not have possibly been caused by the speed bump given the mathematical dimensions of the rental vehicle, its tires, and the ramp/bump itself. Finally and most conclusively, the rental vehicle's SDM or "Black box" tells a much different story than the one you told Progressive.

When confronted with the significant physical and scientific evidence refuting your claim as to how the loss occurred, Progressive gave you an opportunity to address the inconsistency in your January 15, 2013, EUO. Yet instead of providing a truthful answer, you continued to adhere to a false narrative despite its' physical impossibility. Clearly, how the accident or loss occurred is highly relevant to Progressive's determination as to whether there has been a loss, whether the loss is covered by the policy, and/or the damages under the policy. Therefore by maintaining that the damage to the rental vehicle occurred when you drove over the speed bump on Smith Street, you have made a material misrepresentation and Progressive is well within its' right to deny coverage as to this claim.

### C. Lapse in Coverage

Due to your material misrepresentations and lack of cooperation, there is insufficient evidence to establish that the loss occurred before your policy lapsed on November 22, 2012. It has been stated that the loss occurred on November 17 and that you called Richmond to report it. However you have refused to provide cell phone records needed to confirm this assertion. You also claim to have driven for three more days, until November 21, on a vehicle Richmond reported as "not drivable." Despite the extensive damage apparently suffered by this rental vehicle, it is not until November 26 that the damage was discovered and not until November 27 that a claim was made to Progressive. The timing of these incidents is highly suspicious, especially considering that the date of November 17 did not come up until after Richmond was informed that the policy had lapsed.

In asserting this proof of loss, you have failed to cooperate with Progressive in obtaining your phone records, which could have verified the alleged timeframe of events. Furthermore, you have already been proven to have misrepresented how the damage to the vehicle occurred. Thus Progressive has little reason to find your statements regarding when the loss occurred as credible. Again, your uncorroborated timeframe could have been verified but for your refusal to cooperate. Since there is insufficient evidence that this accident or loss occurred during the policy period, Progressive is well within its' right to deny coverage as to this claim.

## IV. CONCLUSION

Accordingly, in that the evidence developed in the course of Progressive's investigation of this claim would lead a reasonable person to conclude that (a) you have failed in your duty to cooperate, (b) that you have made material misrepresentations in the presentment of your claim, and (c) there is insufficient evidence that the loss occurred during the policy period, Progressive will be making no voluntary payments to you or on your behalf in connection with same.

There may be other reasons why coverage is not provided under the policy of insurance in question. Accordingly, the grounds for denial set forth in this letter is not intended to be, nor shall it be construed as, a waiver by Progressive of any of the terms and/or conditions of the subject policy of insurance, nor of any rights or defenses that Progressive has or may have, whether based upon facts now known or to become known in the future, whether legal or equitable in nature, nor as an admission of liability by Progressive to any person or entity who or whatsoever.

We will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Department of Business Regulation, you may do so at the address listed below. In certain limited circumstances the Department may have jurisdiction pursuant to R.I. Gen. Laws § 27-9.1-6 and therefore, you may be able to have the matter reviewed by the Department. The Department of Business Regulation does not have authority to settle or arbitrate claims, determine liability or order an Insurer to pay a claim.

Rhode Island Department of Business Regulation
Insurance Division
233 Richmond Street,
Providence, Rhode Island 02903.

The Rhode Island Department of Business Regulation, Insurance Division can be contacted by telephone at (401) 222-2223.

Thank you for your attention in this matter.

Very truly yours,

Scott M. Carroll

9

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lisa Robertson
132 Wollaston St.
Cranston, RI 02910

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Quinton C Wilson_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Quintone wilson   1/29/13

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7012 3050 0000 7265 4286

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# BSC

ATTORNEYS AT LAW

**BOYLE, SHAUGHNESSY & CAMPO, P.C.**

*Boston, MA  -  Manchester, NH  -  Providence, RI  -  Hartford, CT  -  Portland, ME*

ATTORNEYS AT LAW

695 ATLANTIC AVENUE
BOSTON, MA 02111
(617) 451.2000 TEL
(617) 451.5775 FAX
www.BSCtrialattorneys.com
SCOTT M. CARROLL - *Shareholder*
scarroll@BSCtrialattorneys.com

December 2, 2013

**CERTIFIED MAIL R/R/R:**
**70123050000072654286**

Lisa Robertson
132 Wollaston Street
Cranston, RI, 02910

RE:    Insured:        Lisa Robertson
       Claimant:       Richmond Motor Sales & Rental
       Date of Loss:   11/17/2012 [sic]
       Claim No.:      12-2654933
       Our File No.:   PRG-2609

## NOTIFICIATION OF DENIAL OF CLAIM

Dear Ms. Robertson:

We represent Progressive Insurance Company ("Progressive") with regard to the claim for coverage asserted by Richmond Motor Sales & Rental ("Richmond"). Please be advised that after carefully considering the claim presented, Progressive hereby denies coverage under Progressive Policy No. 31561637-1 ("Policy"). The basis for Progressive's denial is set forth below.

## I. POLICY TERMS

### PART I – LIABILITY TO OTHERS INSURING AGREEMENT

- Subject to the Limits of Liability, if you pay the premium for liability coverage, we will pay damages, other than punitive or exemplary damages, for bodily injury and property damage for which an insured person becomes legally responsible because of an accident arising out of the:
    1. Ownership, maintenance, or use of a vehicle.

PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS

- For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. . . **You or the person seeking coverage must provide us with all accident or loss information including time, place, and how the accident or loss happened.** . . You or the person seeking coverage must also obtain and provide us the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

- If you or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, you or the person seeking coverage must notify the police as soon as practicable.

- A person seeking coverage **must**:
  1. **cooperate with us in any matter concerning a claim or lawsuit**;
  2. provide any written proof of loss we may reasonably require;
  3. **allow us to take signed and recorded statements**, including sworn statements and **examinations under oath**, which we may conduct outside the presence of you or any other person seeking coverage, and **answer all reasonable questions we may ask as often as we may reasonably require**;
  4. promptly call to notify us about any claim or lawsuit and send us any and all legal papers relating to the claim or suit;
  5. attend hearings and trials as we require;
  6. take reasonable steps after a loss to protect the covered auto, or any other vehicle for which coverage is sought, from further loss. . . We will pay reasonable expenses incurred in providing that protection. . . If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
  7. allow us to have the damaged covered auto, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
  8. submit to medical examinations at our expense by doctors we select as often as we may reasonably require; and
  9. **authorize us to obtain medical and other records**.

TRANSFER OF INTEREST

- The **rights and duties under this policy may not be transferred to another person without our written consent**. . . However, if a named insured shown on the declarations page dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

FRAUD OR MISREPRESENTATION

- This policy was issued in reliance upon the information provided on your insurance application. . . We may **void** this policy at any time, **including after the occurrence of an accident or loss**, if you:
  1. made incorrect statements or representations to us with regard to any material fact or circumstance;
  2. concealed or misrepresented any material fact or circumstance; or
  3. engaged in fraudulent conduct;

- at the time of application. . . This means that **we will not be liable for any claims or damages that would otherwise be covered.**

- However, if we certify this policy as proof of financial responsibility, nothing in this provision shall affect coverage under Part I - Liability To Others up to the minimum limits mandated by the motor vehicle financial responsibility law of Rhode Island for an accident that occurs before we notify the named insured that the policy is void. . . No coverage will be provided to you or any other person who engages in fraudulent conduct in connection with an accident or claim. . . If we void this policy, **you must reimburse us if we make a payment.**

- **We may deny coverage** for an accident or loss **if you or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance**, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

LEGAL ACTION AGAINST US

- **We may not be sued** for payment under Part I - Liability To Others until the obligation of an insured person under Part I to pay is **finally determined either by judgment after trial** against that

3

person **or by written agreement** of the insured person, the claimant, and us. . . No one will have any right to make us a party to a lawsuit to determine the liability of an insured person except as provided by law.

## II. THE INVESTIGATION

As a result your claim, Progressive began a comprehensive investigation into the loss.

On November 27, 2012 at 12:47PM, Timothy Monk of Progressive Insurance Company contacted you to conduct a recorded statement. According to your testimony, you rented a 2012 Toyota Camry from Richmond on October 29, 2012, because you needed maintenance work done on your 2005 Chrysler. You stated that on November 17, 2012 you were traveling in the rental vehicle on Smith Street when, upon going over a large speed bump in front of the Rhode Island capital building, you heard a loud noise from underneath the car. You claimed to have been going the speed limit and did not report the incident to Progressive because you thought that there was no damage to the vehicle. Instead, you claimed to have reported the incident to Richmond via your cell phone promptly on November 17. However thus far you have refused to cooperate in providing cell phone records to substantiate this version of events.

You claim that you returned the subject vehicle on November 21 because "it was due for an oil change." The timing of this is unusual considering that your policy lapsed on November 22, 2012. It is also surprising that you would, as you claim, subsequently return to Richmond on Thanksgiving Day, November 22, to rent another vehicle. You also stated to have been unaware of any damage to the vehicle until you were called and informed by Richmond on November 26. You claim a lack of such knowledge despite having driven for three more days in a vehicle that Richmond said was not drivable, having incurred, according to Progressive's appraiser, $6,929.58 worth of damage. Furthermore, by November 26 your policy was no longer in effect, having lapsed on November 22. It was only after being informed that your policy had lapsed, and before speaking to Timothy Monk, that you made a payment to reinstate the policy on November 27.

Richmond provided two separate rental agreements to support this claim. The agreement designated "RA No. 111413" was purportedly signed by you. The information on this agreement was imputed entirely by hand. Notably, this agreement is completely lacking as to any information regarding price per-day or the total cost of the rental. Meanwhile the rental agreement enumerated as "RA 19213" contains much of the same information yet is partly typed and partly handwritten. Unlike RA No. 111413, RA 19213 does contain a

4

description of cost and shows a 29 day rental for $837.81 (odd considering the rental was for only 23 days). However it does not appear that RA 19213 was ever signed. Both agreements show odometer statements of "Miles Out: 14,445" and "Miles In: 18,942", thus indicating you drove 4,497 miles in only 23 days. Based upon the information furnished by Richmond, the payment for the rental for that length of time far exceeds the cost to repair a radiator on a 2005 Chrysler. You claimed that you were to pay Richmond $600 in cash for the rental, but that is not substantiated by any rental agreement or documentation provided from Richmond. It must also be noted that Richmond did not provide a rental agreement or evidence of payment until it learned that Ms. Robinson's coverage had lapsed on November 22, 2012.

A. Forensic Report.

Progressive Insurance retained Parkka Collision Consultants ("Parkka") to evaluate the damage to which the undercarriage the subject Toyota Camry sustained while allegedly traversing the speed bump on Smith Street. In performing a detailed inspection of the damage sustained by the vehicle and speed bump alleged to have caused the loss, Parkka concluded that, based on the dimensions of the vehicle, its' tires, and the speed bump, it is scientifically impossible for the speed bump on Smith Street to have caused the alleged damage. Specifically Parkka states:

> "This vehicle more likely went off the roadway and struck adverse earthen material such as rocks and dirt. The damage to the undercarriage is not uniform as compared to the straight edge on the raised crosswalk. There are also areas which are located so close to the wheel's suspension and within the circumference of the wheel, that the raised crosswalk would not be able to make contact. The configuration of the crosswalk is only 4 inches off the ground with a 10 foot ramp before leveling out. The wheel base on the Toyota would have allowed the vehicle to completely enter the ramp before traversing on to the upper brick surface. With a manufactured clearance of 6 inches, the Toyota would not be able to contact the lower surface of the raised crosswalk. Furthermore the roadway is regulated to a speed of 20 miles per hour. Numerous vehicles were observed traversing over the raised crosswalk at speeds far greater than 20 miles per hour without making contact."

In further confirmation that your report regarding the loss was inaccurate, Parkka examined the Toyota's sensor and diagnostic module ("SDM"), commonly referred to as a black box. The SDM did not detect an impact to a speed bump like you described. Instead it detected two events only moments apart. "Event 1" was detected as an impact causing the vehicle to become stuck and "Event 2" showed a rapid acceleration followed by a significant jolt. This reading confirmed Parkka's determination, as:

*"Based on the damage to which the vehicle sustained to the undercarriage, it appears the Toyota likely struck a low fixed object at a low speed and became hung up and unable to move. Thereafter, recorded child or small adult exited the vehicle. This would be consistent with the recorded status of the seat for [Event 2]. The vehicle was now heavily accelerated in an attempt to free itself before receiving a significant jolt.  The RPMs would have increased significantly with a high rise in speed as the wheels spin. This is exactly what we see in the [Event 2] data. The speed is above 75.8 and the accelerator rate increased to 13.5% with 200RPM . . . as it relates to the damage and how it more likely occurred, our opinion has not changed. As for the data obtained from the Toyota, it is likely the vehicle was hung up on a low fixed object, before releasing and causing a second significant jolt after obtaining a speed of over 75.8 miles per hour. All the variables contained in [Event 2] would be consistent with the secondary impact and/ or release of the Toyota from the fixed object."*

B. Examinations Under Oath

As part of Progressive's investigation into your claimed loss, you submitted to two examinations under oath ("EUO"), one conducted on January 15, 2013, and the other on April 30, 2013. Throughout these examinations you gave incomplete, evasive and conflicting testimony. Just some of the issues left unanswered by your testimony are as follows:

- You could not explain why you were in a rental car for approximately month and constantly renting more vehicles.
- At the time of the EUOs you had been unemployed since May 31, 2012 and were relying on $600.00 worth of monthly child support. Yet you could not sufficiently account for the funds used to pay for your rental vehicles. Furthermore you failed to produce any financial documentation to support your ability to pay for the rental vehicle.
- You testified that you took your 2005 Chrysler off the road because the $650 repair was too expensive. You then subsequently gave it away to a Michael Dwyer. However, the cost of repairing the 2005 Chrysler, is significantly exceeded by your rental costs. The rental of the subject Toyota Camry alone cost $837.81. Furthermore, you have no supporting documentation of the sale or gift to Michael Dwyer.
- You stated that you're 2005 Chrysler needed an alignment, which would have been routinely done after the vehicle had been repaired, particularly since it suffered a rear end collision. In fact the appraisal from Allstate reflects that your 2005 Chrysler was realigned after the accident.
- You could not sufficiently account for the miles driven with the rental vehicle.

- You could not sufficiently account for the direction of travel before and after the purported accident.
- Your account of attending a baby shower for a Kallena Munroe at the Chad Brown Housing Complex in Providence on the date of the purported loss, upon investigation, is not credible.
- You have failed, despite multiple requests, to produce your cell phone records from the date of loss, which are necessary to corroborate your version of events.

## III. ANALYSIS

### A. Duty to Cooperate

It is well established in Rhode Island, and throughout the country, that an insured has a duty to cooperate, and if requested, to submit to an examination under oath and produce documents relative to her claim. The United States Supreme Court has upheld an insurer's right to an investigation and truthful answers. Claflin v. Commonwealth Ins. Co. of Boston, et al., 110 U.S. 81 (1884). The Court held that an insurer has a right to all material knowledge and information "to enable [it] to decide upon [its] obligations, and to protect [itself] against false claims." Claflin, 110 U.S. at 94-95.  Therefore an insured must submit to examinations under oath to fulfill his or her duty to cooperate. "It is quite apparent that if the insurer is to prepare . . . or make a just settlement, it must have from the insured a complete and truthful statement of the facts made in the spirit of co-operation and helpfulness by the insured, who is, in many cases at least, the only source of information available to the insurer." Ciaccio v. Norfolk & Dedham Mut. Fire Ins. Co., 90 R.I. 379, 384 (1960). Thus, a cooperation provision is "not a covenant but a condition which if not complied with gives the insurer the right to terminate the policy." Marley v. Bankers' indemnity Insurance Co., 53 R.I. 289, 292 (1933).

Progressive has the right to request that its' insured provide and/or authorize it to obtain records pertinent to the claim. Pisa v. Underwriters at Lloyds London, 787 F.Supp. 283 (D.R.I. 1992). An insured cannot recover payment under a policy unless he can show that he has performed his contractual and statutory obligations as "supplying this information is a contractual precondition to [the insurer]'s duty to make payment of the claim." Id. at 285.

Clearly you have failed to meet the above mentioned standard in fulfilling your duty of cooperation to Progressive. In addition to your testimony under oath, which was evasive, incomplete, inconsistent, and contrary to evidence, you have failed to produce records to which Progressive is entitled. Specifically you have failed to produce financial/banking documentation or cell phone records. In regards to your cell phone records, not only did you fail to produce them, you refused to give Progressive authorization to obtain them at your April 30, 2013 EUO, stating simply that "I'm not going to sign the records for my cell phone. .

. . I don't have to sign." This refusal came despite explicit disclosures from both Progressive and your own attorney that such a refusal would be a violation of your duty to cooperate. Therefore, because you have refused to provide the financial and cell phone records requested, Progressive is well within its' right to deny coverage as to this claim.

### B. Material Misrepresentation

Based on the findings of the accident reconstructionists and other facts known to date, it is clear that you have made material misrepresentations in the presentation of this claim. It is well settled that policyholders who intentionally furnish materially false information regarding a claim are barred from recovery. Although separately enumerated in the policy, an insured's duties of cooperation and truthfulness go hand-in-hand, and your material misrepresentations as to the accident's occurrence is thus also a violation of your duty to cooperate.

In Rhode Island, the intentional furnishing of false information of a material nature precludes coverage. A material misrepresentation is not necessarily a decisive or significant fact but rather one that is "reasonably relevant to the insurance company's investigation of a claim." Dadurian v. Underwriters at Lloyd's, 787 F.2d 756, 760 (1st Cir. 1986). "Insurance policies usually provide that any fraud or false swearing by the insured, whether before or after a loss or occurrence, relieves the insurer from liability. Under such a provision, false statements as to material matters willfully made by the insured in proofs of loss with the intention of deceiving the insurer preclude any recovery on the policy by the insured[.] . . . If a false statement is knowingly made to the insurer with regard to a material matter, the intent to defraud will be inferred. . . . A statement is material if it is reasonably relevant to an insurance company's determination as to whether there has truly been a loss, or whether a loss is covered by the policy; and/or the amount of damages to be paid under the policy. . . . The making of a misrepresentation of a material fact to an insurance company under such circumstances is sufficient to void the policy without regard to motive." Nat'l Grange Mut. Ins. Co. v. Joseph, 2004 WL 2821510, *1-2 (R.I. Super. Ct. 2004).

Throughout the investigation of this claim, you have maintained that the damage to the rental vehicle occurred when you drove over the speed bump on Smith Street, in front of the Rhode Island capital building. However during Progressive's investigation it was discovered by the Parkka accident reconstructionists that the damage to the rental vehicle could not have possibly happened as you claimed. The damage to the vehicle was not consistent with a uniform surface, like a speed bump, but rather was caused by an uneven and "earthen" material. Furthermore, the damage could not have possibly been caused by the speed bump given the mathematical dimensions of the rental vehicle, its tires, and the

ramp/bump itself. Finally and most conclusively, the rental vehicle's SDM or "Black box" tells a much different story than the one you told Progressive.

When confronted with the significant physical and scientific evidence refuting your claim as to how the loss occurred, Progressive gave you an opportunity to address the inconsistency in your January 15, 2013, EUO. Yet instead of providing a truthful answer, you continued to adhere to a false narrative despite its' physical impossibility. Clearly, how the accident or loss occurred is highly relevant to Progressive's determination as to whether there has been a loss, whether the loss is covered by the policy, and/or the damages under the policy. Therefore by maintaining that the damage to the rental vehicle occurred when you drove over the speed bump on Smith Street, you have made a material misrepresentation and Progressive is well within its' right to deny coverage as to this claim.

### C. Lapse in Coverage

Due to your material misrepresentations and lack of cooperation, there is insufficient evidence to establish that the loss occurred before your policy lapsed on November 22, 2012. It has been stated that the loss occurred on November 17 and that you called Richmond to report it. However you have refused to provide cell phone records needed to confirm this assertion. You also claim to have driven for three more days, until November 21, on a vehicle Richmond reported as "not drivable." Despite the extensive damage apparently suffered by this rental vehicle, it is not until November 26 that the damage was discovered and not until November 27 that a claim was made to Progressive. The timing of these incidents is highly suspicious, especially considering that the date of November 17 did not come up until after Richmond was informed that the policy had lapsed.

In asserting this proof of loss, you have failed to cooperate with Progressive in obtaining your phone records, which could have verified the alleged timeframe of events. Furthermore, you have already been proven to have misrepresented how the damage to the vehicle occurred. Thus Progressive has little reason to find your statements regarding when the loss occurred as credible. Again, your uncorroborated timeframe could have been verified but for your refusal to cooperate. Since there is insufficient evidence that this accident or loss occurred during the policy period, Progressive is well within its' right to deny coverage as to this claim.

## IV. CONCLUSION

Accordingly, in that the evidence developed in the course of Progressive's investigation of this claim would lead a reasonable person to conclude that (a) you have failed in your duty to cooperate, (b) that you have made material misrepresentations in the presentment of your claim, and (c) there is insufficient evidence that the loss occurred during

the policy period, Progressive will be making no voluntary payments to you or on your behalf in connection with same.

There may be other reasons why coverage is not provided under the policy of insurance in question.  Accordingly, the grounds for denial set forth in this letter is not intended to be, nor shall it be construed as, a waiver by Progressive of any of the terms and/or conditions of the subject policy of insurance, nor of any rights or defenses that Progressive has or may have, whether based upon facts now known or to become known in the future, whether legal or equitable in nature, nor as an admission of liability by Progressive to any person or entity who or whatsoever.

We will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Department of Business Regulation, you may do so at the address listed below. In certain limited circumstances the Department may have jurisdiction pursuant to R.I. Gen. Laws § 27-9.1-6 and therefore, you may be able to have the matter reviewed by the Department. The Department of Business Regulation does not have authority to settle or arbitrate claims, determine liability or order an Insurer to pay a claim.

> Rhode Island Department of Business Regulation
> Insurance Division
> 233 Richmond Street,
> Providence, Rhode Island 02903.

The Rhode Island Department of Business Regulation, Insurance Division can be contacted by telephone at (401) 222-2223.

Thank you for your attention in this matter.

Very truly yours,

Scott M. Carroll

10

# EXHIBIT

# C

$CA$ $14-18M$   JD

STATE OF RHODE ISLAND

PROVIDENCE COUNTY, SC

SUPERIOR COURT
C.A. NO.: 2013-5406

RICHMOND MOTOR SALES, INC.,            )
and LISA ROBERTSON                      )
    *Plaintiffs*                       )
                                        )
vs.                                     )
                                        )
PROGRESSIVE CASUALTY                    )
INSURANCE COMPANY a/k/a THE             )
PROGRESSIVE CORPORATION                 )
    *Defendant*                       )

## ANSWER OF THE DEFENDANT, PROGRESSIVE CASUALTY INSURANCE COMPANY TO THE AMENDED COMPLAINT OF THE PLAINTIFFS, RICHMOND MOTOR SALES, INC. AND LISA ROBERTSON

### FIRST DEFENSE

The defendant, Progressive Casualty Insurance Company, answers the separately

numbered paragraphs of the Complaint as follows:

    1.  The defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in this paragraph.

    2.  The defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in this paragraph.

    3. The defendant denies the allegations contained in this paragraph.

    4. The Complaint speaks for itself.

    5. The defendant denies the allegations contained in this paragraph.

    6. The defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in this paragraph.

    7. The defendant is without knowledge or information sufficient to form a

True Copy Attest

*[signature]*

Office of Clerk of Superior Court
Providence & Bristol
Rhode Island

SUPERIOR COURT
FILED
HENRY S. KINCH JR., CLERK
2014 JAN 10  A 8: 39

belief as to the truth of the allegations contained in this paragraph.

    8. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    9. The defendant denies the allegations contained in this paragraph.

    10. The defendant admits the allegations contained in this paragraph.

    11. The defendant admits only that it has not issued payment to Richmond.

    12. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

## COUNT I
### (Declaratory Judgment as to the Violation of Liability Insurance Coverage)

    13. The defendant's answers to paragraphs 1 through 12 are repeated, reasserted and incorporated herein by reference.

    14. The statute speaks for itself.

    15. The defendant denies the allegations contained in this paragraph.

    16. The defendant denies the allegations contained in this paragraph.

    17. The defendant denies the allegations contained in this paragraph.

## COUNT II
### (Bad Faith/ Breach of Implied Good Faith Against the Defendant)

    18. The defendant's answers to paragraphs 1 through 17 are repeated, reasserted and incorporated herein by reference.

    19. The defendant denies the allegations contained in this paragraph.

    20. The defendant denies the allegations contained in this paragraph.

    21. The defendant denies the allegations contained in this paragraph.

## COUNT III

(Damages)

22. The defendant's answers to paragraphs 1 through 21 are repeated, reasserted and incorporated herein by reference.

23. The defendant denies the allegations contained in this paragraph.

24. The defendant denies the allegations contained in this paragraph.

## SECOND DEFENSE

The plaintiff has failed to meet the requirements necessary to maintain a direct action against an insurer under G.L. § 27-7-2 and thus has no standing under Rhode Island law.

## THIRD DEFENSE

The plaintiff has not first obtained a judgment against the insured tortfeasor in a separate action and therefore, pursuant to G.L. § 27-7-2, lacks standing to proceed in an action directly against the defendant insurer.

## FOURTH DEFENSE

The complaint should be dismissed as Attorneys Mancini and Goodier's representation of both the claimant and insured tortfeasor against the defendant-insurer presents an unacceptable conflict of interest under G.L. § 27-7-2, which requires a claimant-plaintiff to first obtain a judgment against the insured tortfeasor before proceeding on that judgment against an insurer.

## FIFTH DEFENSE

Pursuant to G.L. § 9-1-33, Richmond, a third party claimant, has no standing to bring an action in bad faith against an insurer under a contract to which it was not a party and thus the Complaint should be dismissed.

True Copy Attest

_(signature)_

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

3

## SIXTH DEFENSE

The Complaint should be dismissed as no coverage is afforded under the policy of insurance at issue.

## SEVENTH DEFENSE

The Complaint should be dismissed as the plaintiffs have failed to satisfy the conditions precedent necessary to trigger coverage under the subject policy.

## EIGHTH DEFENSE

The Complaint should be dismissed as the defendant's insured has not suffered a loss or damages necessary to trigger coverage under the policy.

## NINETH DEFENSE

Richmond has no contractual relation to the insurance contract at issue and thus has no standing, rights, or remedies under the policy.

## TENTH DEFENSE

Where Richmond is not a party to the insurance contract at issue and said insurance policy proscribes against the assignment of an insured's rights under the policy, Richmond has no standing, rights, or remedies under said policy.

## ELEVENTH DEFENSE

The Complaint should be dismissed pursuant to R.I. Sup. Ct. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter.

## TWELFTH DEFENSE

The Complaint should be dismissed pursuant to R.I. Sup. Ct. R. Civ. P. 12(b)(2) for lack of jurisdiction over the person.

## THIRTEENTH DEFENSE

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Rhode Island

4

The Complaint should be dismissed pursuant to R.I. Sup. Ct. R. Civ. P. 12(b)(3) for improper venue.

### FOURTEENTH DEFENSE

The Complaint should be dismissed pursuant to R.I. Super. Ct. R. Civ. P. 12(b)(4) for insufficiency of process.

### FIFTEENTH DEFENSE

The Complaint should be dismissed pursuant to R.I. Super. Ct. R. Civ. P. 12(b)(5) for insufficiency of service of process.

### SIXTEENTH DEFENSE

The Complaint should be dismissed pursuant to R.I. Super. Ct. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### SEVENTEENTH DEFENSE

The Plaintiff's claims are barred by laches, waiver, and/or estoppel.

### EIGHTEENTH DEFENSE

The Plaintiff has failed to mitigate, minimize or avoid damages, if any, alleged in the Complaint; accordingly, any recovery must be reduced by the amount of damage resulting from such failure.

### NINETEENTH DEFENSE

The acts or omissions which are alleged to have caused the damages and/or injuries referred to in Plaintiff's Complaint were committed by a third party, who was not an agent or employee of the Defendant and for whose acts or omissions the Defendant is not legally responsible.

### TWENTIETH DEFENSE

True Copy Attest

Office of Clerk of Superior Court
_____ties of Providence & Bristol
_____ Rhode Island

5

The Complaint must be dismissed where this Defendant complied with all rules, statutes, and regulations.

## TWENTY-FIRST DEFENSE

The Complaint must be dismissed on the grounds that the Plaintiff is barred from recovery against the Defendant as a matter of law.

## THE DEFENDANT DEMANDS A TRIAL BY JURY.

WHEREFORE, the Defendant demands that this action be dismissed and that judgment enter in the Defendant's favor together with costs.

THE DEFENDANT,
PROGRESSIVE CASUALTY
INSURANCE COMPANY,
BY ITS ATTORNEYS

Date: 1/9/14

Scott M. Carroll, Bar No.: 7624
John D. Bowen, Bar No.: 9070
Boyle, Shaughnessy & Campo, P.C.
695 Atlantic Avenue
Boston, MA 02111
(617) 451-2000
FAX: (617) 451-5775

True Copy Attest

of Clerk of Superior Court
Providence & Bristol
Rhode Island

6

## CERTIFICATION

I hereby certify that on this 10 day of January , 2014, a true copy of the foregoing was served first-class postage prepaid on all parties or their representatives in this action as listed below:

John O. Mancini, Esq.
Nicholas J. Goodier, Esq.
Law Officers of Michael A. Kelly, P. C.
128 Dorrance Street, Suite 300
Providence, RI 02903


Scott M. Carroll, Bar No.: 7624
John D. Bowen, Bar No.: 9070


True Copy Attest

of Clerk of Superior Court
widence & Bristol
le Island